SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00246-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ARONTE KERNEY JR.,** | |
| **Defendant.** | |

### Introduction

During an unrelated investigation into a robbery and vehicle theft in Springfield, Oregon, officers stopped and detained the defendant. After he was arrested for providing a false identity, officers discovered two 9mm cartridges in his coat pocket, despite his being on federal supervision for a prior felon-in-possession conviction. The United States and the defendant reached a joint sentencing agreement recommending a 48-month term of imprisonment and preserving the defendant's ability to appeal the Court's denial of his motion to suppress.

**Government's Sentencing Memorandum**                                    **Page 1**

### A.  Factual Background

The defendant is a documented member of the Inglewood Family Bloods and uses the street name "Tae Bills." In 2021, he was convicted of Felon in Possession of a Firearm and placed on federal supervised release. On October 3, 2023, United States Magistrate Judge Marco Hernandez issued a warrant for his arrest after he violated several conditions of his supervision, including absconding.

On January 2, 2024, three juvenile females committed an assault, robbery, and vehicle theft in Springfield, Oregon. A few hours later, a citizen reported that the same juveniles returned to the area accompanied by a male later identified as the defendant. Springfield officers responded and contacted the defendant, who provided a false name and date of birth. After officers determined that the name belonged to a deceased individual, they arrested him and conducted a search incident to arrest, during which an officer found two Luger 9mm cartridges in his coat pocket.

Officers subsequently determined the defendant's true identity, the existence of the federal arrest warrant, and his status as a convicted felon.

### B.  The Charges

Defendant was charged by two counts, including Count 2 – Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1).[1]

/ / / /

/ / / /

---

[1] The defendant was also indicted for felon in possession of a firearm based on a firearm located in one juvenile female's purse. The government acknowledged the difficulty of being able to call that juvenile female as a witness at trial and agreed to resolve the case with a guilty plea to the ammunition only.

**Government's Sentencing Memorandum**                                    **Page 2**

### C.  The Plea Agreement & Guideline Computations

The defendant agreed to plead guilty to Count 2 of the Indictment and the parties agreed to the following guidelines as part of the plea agreement.  The parties agree that the defendant's case is a base offense level of 20 pursuant to USSG § 2K2.1(a). (PSR ¶ 22).

The government recommends a three-level reduction under USSG §3E1.1, provided defendant continues to demonstrate acceptance of responsibility. (PSR ¶ 8). The government recommends a one-level downward variance pursuant to 18 U.S.C. § 3553(a) for defendant resolving the case short of trial and forgoing any additional pretrial litigation. (PSR ¶ 8).

The parties agree with the following PSR computations:

| Count 2: 18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition | | |
|---|---|---|
| USSG § 2K2.1(a)(1) | Base Offense Level | 20 |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| 18 U.S.C. § 3553(a) | Resolved Without Pretrial Litigation | -1 |
| | **Adjusted Offense Level** | **16** |

### D.  Criminal History

| Crime | Date Sentence Imposed | Jurisdiction | Sentence | CH Points |
|---|---|---|---|---|
| Attempted Assault I, UUW | 8/9/2012 | Multnomah County | 60 days | 0 |
| Robbery III, Assault III | 7/29/2013 | Multnomah County | 14 months | +3 |
| False Information to Police Officer | 6/1/2015 | Clackamas County | Probation – revoked 1 year | 0 |
| UUW – Firearm | 3/31/2015 | Multnomah County | Probation – revoked 40 months | +3 |
| Felon in Possession of a Firearm | 6/30/2016 | Multnomah County | 60 months prison | +3 |

**Government's Sentencing Memorandum**                                      **Page 3**

| Felon in Possession of a Firearm | 6/29/2021 | U.S. District Court – Portland, Oregon | 30 months prison | +3 |
|---|---|---|---|---|

The defendant has a significant criminal history revolving around guns and violence that began at the young age of 12. (PSR ¶¶ 33-50). He received an additional point for committing the offense while on supervision. (PSR ¶ 49).

The total criminal history score is 13. (PSR ¶ 50). According to the sentencing table in U.S. Sentencing Guidelines Manual § 5A, a criminal history score of 13 establishes a criminal history category of VI. *Id*.

### E.  Government's Recommended Sentence

The United States and the defendant reached a joint recommendation designed to preserve the defendant's ability to appeal the Court's ruling on the Motion to Suppress. This resolution emerged only after both parties confronted the reality that a full trial would serve little purpose: the defendant's singular focus was appealing the suppression ruling. He agreed to plead guilty and accept responsibility—but only if he could pursue that appeal. Under these circumstances, the parties determined that a joint recommendation of 48 months' imprisonment was the most efficient, fair, and appropriate path forward.

While the defendant was found with only two rounds of ammunition, the seriousness of his conduct cannot be measured by the quantity alone. His extensive criminal history and his continued ties to gangs, guns, and violence make clear that this possession was not a one-off or harmless act. At first glance, two 9mm bullets may appear insignificant. But Portland's fluctuations in gun violence over the last six years have shown, time and again, that even two

rounds can end two lives. When prohibited individuals possess ammunition, the danger to the community is not theoretical—it is immediate and severe. Stopping that cycle is imperative.

The defendant's history underscores this urgency. He has been cycling in and out of custody since the age of twelve. His world has been shaped by gang culture and violence at every turn. Without drastic and immediate change, the trajectory of his life is tragically predictable: more incarceration, or another young life lost to gang violence. Breaking this pattern will require him to sever ties with family and friends who remain entrenched in the gang lifestyle. He has witnessed the consequences firsthand. His brother, Davontae Kerney, was murdered in gang violence in 2019. His maternal uncle, Jaron Weeks, was killed in a gang shooting in 2020. And his father, Aronte Kerney, Sr.—a senior Inglewood Family Bloods member—was sentenced to 36 months' imprisonment in 2024 for possessing an AR pistol with a large capacity magazine. The defendant does not have to imagine where this path leads; he has lived its consequences.

Incarceration or death—those are the outcomes waiting for him if he does not change. Neither is acceptable, and the recommended sentence gives him an opportunity to choose a different future. But that choice must be his, and it must start now.

The advisory guideline range is 46-months to 57-months, factoring in the recommended departures. While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49

**Government's Sentencing Memorandum**                                              **Page 5**

(2007); *Rita*, 551 U.S. at 350.  The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion.  *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

**Conclusion**

Based on the foregoing, the government and the defendant jointly recommend that this Court impose a sentence of 48 months, followed by a 3-year term of supervised release.

Dated: June 17, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney

**Government's Sentencing Memorandum**                                        **Page 6**